UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SACV 03-1474 JVS(MLGx)  Date October 26, 2006

Title  Akira Akazawa, et al. v. Link New Technology International



Present: The Honorable  James V. Selna

Karla J. Tunis                        Not Present
Deputy Clerk                         Court Reporter

Attorneys Present for Plaintiffs:    Attorneys Present for Defendants:

Not Present                          Not Present

**Proceedings:** (In Chambers)  Order Granting Defendant's Motion for Summary Judgment Regarding Lack of Standing(Fld 9-1-06)

Defendant Link New Tech, Inc. ("Link") moves for summary judgment regarding plaintiffs Akira Akazawa ("Akazawa") and Palm Crest, Inc.'s ("Palm Crest") standing to sue for infringement of U.S. Patent No. 5,614,716 (the "'716 patent"). Link argues that the transfer of rights to the '716 patent from the inventor's estate to his heirs was invalid under the Patent Act because the assignment was not in writing. Therefore, Link asserts, all subsequent assignments are invalid and Akazawa lacks standing to sue. For the reasons described below, the motion is granted.

I.  BACKGROUND

The following relevant facts are undisputed:

The '716 patent issued on April 1, 1997 to Yasumasa Akazawa ("Yasumasa"), the only named inventor. (Litovsky Decl., Exh. A.) Neither Hitomi Akazawa ("Hitomi"), Yuki Akazawa ("Yuki"), Fumi Akazawa ("Fumi"), nor Akira Akazawa ("Akazawa") were named inventors of the '716 patent. (Id.) At the time the '716 patent issued, it was not assigned to anyone. (Id.)

Yasumasa died on March 25, 2001. (Litovsky Decl., Exh. B, ¶ 3.) At the time of his death, Yasumasa owned the '716 patent. (Litovsky Decl., Exh. A; Litovsky Decl., Exh. B, ¶ 2.) Yasumasa did not have an executed will when he died. (Id.)

Hitomi, Yuki, and Fumi are the only heirs of Yasumasa. (Litovsky Decl., Exh. C.) Upon Yasumasa's death, Yoshiaki Nagata ("Nagata") acted as an administrator of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS(MLGx) | Date | October 26, 2006 |
| Title | Akira Akazawa, et al. v. Link New Technology International | | |

Yasumasa's estate.[1] (Litovsky Decl., Exh. E.). Nagata prepared certain documents relating to the distribution of the estate, which were executed by Hitomi, Yuki, and Fumi. (Litovsky Decl., Exh. D, 47:16-19; Litovsky Decl., Exh. E, ¶ 1.) No written document exists that purports to transfer any rights or title to the '716 patent from Yasumasa's estate to any person or entity.[2] (Litovsky Decl., Exh. I, 84:8-17; Litovsky Decl., Exh. E, ¶ 1.)

Akazawa obtained no ownership rights to the '716 patent directly from Yasumasa. (Litovsky Decl., Exh A; Litovsky Decl., Exh. G; Litovsky Decl., Exh. H, 8:11-9:22.) Palm Crest, Inc. claims no ownership rights in the '716 patent. (Litovsky Decl., Exh. A; Litovsky Decl., Exh. H, 8:11-9:22.)

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. MEMC Elec. Materials Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005). If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. Id. If the non-moving party meets this burden, then the motion will be denied. See generally, Bose Corp. v. JBL Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001). The Court will view the evidence in the light most favorable to the non-moving party. MEMC, 420 F.3d at 1373.

---

[1] Akazawa argues that Nagata's role was informal and that he lacked authority to make assignments on behalf of Yasumasa's estate, and therefore disputes the allegation that Nagata acted as an "administrator" as the term is commonly defined by United States law. (See Sep. 13, 2006 Nagata Decl.)

[2] Akazawa argues that no writing was required to effect such a transfer under Japanese intestacy law. Howver, Akazawa does not dispute the fact that no such writing exists.

B.   Standing

The question of standing to sue is a jurisdictional one. Rite-Hite, Corp. v. Kelley Co., 56 F.3d 1538, 1551 (Fed. Cir. 1995). Standing in a patent infringement suit is derived from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The term "patentee" encompasses "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). Transfer of title, or assignment, is governed by Section 261, which provides:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

35 U.S.C. § 261 (1994); Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1340 (Fed. Cir. 2006); Prima-Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000).

III.   DISCUSSION

Akazawa's standing to sue depends upon his ability to demonstrate that he is a successor in title to the '716 patent. Having reviewed the evidence submitted by the parties, the Court finds that Link has met its burden of establishing an absence of genuine issues of material fact, and that Akazawa's evidence is not sufficient to create a genuine issue of material fact.

Yasumasa held title to the '716 patent at the time of his death. Akazawa obtained no ownership rights to the '716 patent directly from Yasumasa. Thus, there must be an unbroken sequence of written assignments, starting with Yasumasa and ending with Akazawa, in order for Akazawa to have standing. Akazawa argues that sequence is as follows:

1. Yasumasa died intestate, and his ownership of the '716 Patent passed to his wife, Hitomi, and two daughters, Yuki and Fumi, under Japanese laws of intestacy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS(MLGx) | Date | October 26, 2006 |
| Title | Akira Akazawa, et al. v. Link New Technology International | | |

2. Yuki and Fumi assigned their interest in the '716 Patent to Hitomi in an "Inheritance Agreement."

3. Hitomi executed an assignment transferring all rights in the '716 Patent to Akazawa.

The first step in this sequence was the transfer of title from Yasumasa's estate to his heirs, Hitomi, Yuki, and Fumi, upon his death. It is undisputed that no writing exists which purports to effect this transfer.[3] Consequently, resolution of this motion turns solely on the legal question of whether such a writing was required.

Link argues the intestate transfer of title to the '716 patent from Yasumasa's estate to his heirs is invalid because the assignment was not in writing as required by 35 U.S.C. § 261. Link asserts that Section 261 requires that any transfer of patent interests from a decedent's estate to his legal heirs be made in a writing executed by the administrator of the estate. Because no writing exists which purports to transfer title to the '716 patent from Yasumasa's estate to Hitomi, Fumi, and Yuki, Link argues that any subsequent assignment from them to Akazawa is invalid.

Akazawa argues that no such writing is required under Japanese intestacy law. Akazawa asserts that this case presents a conflict of laws issue, and that the Patent Act and American case law do not control the distribution of Yasumasa's estate under Japanese law.

Patent rights are property. Patlex Corp. v. Mossinghoff, 758 F.2d 594, 599 (Fed. Cir. 1985). "The issuance of a patent brings into existence a contractual relationship between the Government and the patentee." Owen v. Paramount Prods., Inc., 41 F. Supp. 557, 559-60 (C.D. Cal.) (citing Century Elec. Co. v. Westinghouse Elec. & Mfg. Co., 191 F. 350, 354 (8th Cir. 1911)). "That Congress has the right to impose certain formal requirements not only upon the application for a patent, and its issuance, but also

---

[3] Akazawa's evidence regarding the characterization and authority of Nagata as the administrator of Yasumasa's estate does not create a genuine issue of material fact as to the existence of such a writing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS(MLGx) | Date | October 26, 2006 |
| Title | Akira Akazawa, et al. v. Link New Technology International | | |

upon the manner of its transfer, is fundamental and unquestioned." Id.

The Court disagrees with Akazawa's assertion that the validity of the intestate transfer must be determined exclusively by examining Japanese law, rather than the Patent Act, at least for the purpose of determining whether there was a valid transfer under the Patent Act. The monopoly granted to a patentee "is created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes." Gayler v. Wilder, 51 U.S. 477, 494 (1850); see also United States v. Solomon, 825 F.2d 1292, 1296 (9th Cir. 1987) ("A patent is a creature of federal statute and may be transferred only according to the terms of the patent statutes."); ERNEST BAINBRIDGE LIPSCOMB III, WALKER ON PATENTS § 19.4, at 333 (3d ed. 1986). Japanese law may determine who the '716 patent could be transferred to upon Yasumasa's death, but the Patent Act determines the manner by which the assignment must be made.[4]

---

[4] At oral argument on the motion, Akazawa cited to four additional cases not relied upon in his papers. Having reviewed these cases, the Court finds that they are inapposite to the question of whether a writing was required by 35 U.S.C. § 261 to effectuate the intestate assignment of the '716 patent from Yasumasa's estate to Hitomi, Fumi, and Yuki.

At first blush, the two Federal Circuit cases cited by Akazawa appear to be highly relevant. See Int'l Nutrition Co. v. Horphag Research, Ltd., 257 F.3d 1324, 1329 (Fed. Cir. 2001) ("The question of who owns patent rights, and on what terms, typically is a question for state courts and not one arising under United States patent laws."); Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572 (Fed. Cir. 1997) ("It may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts."). Closer inspection, however, reveals that neither case examines the requirements of Section 261 as the assignments in both cases were in writing.

In International Nutrition, the Federal Circuit found no abuse of discretion in extending international comity to a French court's determination of ownership of a United States patent that had been assigned pursuant to a French contract. Int'l

Nutrition, 257 F.3d at 1329. Importantly, the court noted that there was *no conflict* between United States patent law and the foreign law. See id. at 1330 ("There is, therefore, no conflict between United States patent law, and enforcing the intent of the parties to the development contract that it should be interpreted under the laws of a foreign country."). The court specifically discussed the potential applicability of 35 U.S.C. § 262, which allows for unilateral exploitation of a patent by a joint owner "[i]n the absence of any agreement to the contrary," concluding that the disputed contract was an "agreement to the contrary." Id. ("[B]ecause the development contract is an agreement to the contrary, there is no conflict between the French decisions and section 262. In the absence of any conflict, we see no abuse of discretion in the district court's extension of comity to the French court's determination [of ownership]."). Were the Patent Act irrelevant because ownership of the patent was determined exclusively by foreign law, then no discussion of Section 262 would be required. Therefore, the Court reads International Nutrition to stand for the proposition that foreign law may be determinative of ownership only to the extent that it does not conflict with the requirements of the Patent Act.

Similarly, in Jim Arnold, the Federal Circuit held that an action for patent infringement, where the plaintiff's ownership of the patent depended upon rescission of an assignment agreement, arises under state law, rather than the Patent Act. Jim Arnold, 109 F.3d at 1579. The assignment agreements appear to have all been in writing, and there was therefore no discussion as to the applicability of 35 U.S.C. § 261.

Akazawa also cited to two California cases dealing with community property. Neither of these cases deals with standing to sue under the Patent Act. In Lorraine v. Lorraine, 8 Cal. App. 2d 687 (1935), the California Court of Appeal found that various patents issued to a husband during marriage were community property of the husband and wife. Id. at 701. Thus, the court held that the wife was entitled to a one-half interest in the profits realized from the manufacture and sale of the goods produced under the patent. Id. at 701-02. The opinion does not speak to the wife's standing to sue for infringement under the patent.

Fieger v. Fieger, 28 Cal. App. 2d 736 (1938), appears to be completely irrelevant, as it does not deal with the apportionment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS(MLGx) | Date | October 26, 2006 |
| Title | Akira Akazawa, et al. v. Link New Technology International | | |

Under the Patent Act, "patents, or any interest therein, shall be assignable in law by an instrument *in writing*." 35 U.S.C. § 261 (emphasis added). A patent may be assigned by the patentee, his assigns, or legal representatives. Id. The instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent. McClaskey v. Harbison-Walker Refractories Co., 138 F.2d 493, 499 (3d Cir. 1943). Yasumasa had not assigned the '716 patent prior to his death. Thus, the question is whether the Patent Act requires the legal representative of an intestate decedent's estate to assign a patent to the decedent's heirs in writing.

In Owen v. Paramount Productions, Inc., the district court held that a will which bequeathed "all the real and personal property of decedent" was not sufficient to assign a patent to the named devisee. Owen, 41 F. Supp. at 560. Thus, the individual devisee had no title to the patents in question. Id. Analogizing to 35 U.S.C. § 46, which provided that "when an inventor or discoverer dies before a patent is granted, 'the right of applying for and obtaining the patent shall devolve on his executor or administrator, in trust for the heirs at law of the deceased, in case he shall have died intestate; or if he shall have left a will disposing of the same, then in trust for his devisees,'" the court found that title to the patent was held by the executrix of the estate. Id. (citing 35 U.S.C. § 46).[5]

---

of patent rights at all. In Feiger, a husband and wife had acquired certain patent rights as community property while they were married. Id. at 737. The divorce decree did not divide their rights in the patent. Id. Instead, the issue in Feiger was whether the husband could enjoin the wife from using a specific trade name. Id. at 738.

Japanese law may well have determined who the '716 patent could be transferred to upon Yasumasa's death, but any such transfer must have been in the manner dictated by the Patent Act.

[5] 35 U.S.C. § 46 has since been replaced by 35 U.S.C. § 117, which provides that "[l]egal representatives of deceased inventors and of those under legal incapacity may make application for patent upon compliance with the requirements and on the same terms and conditions applicable to the inventor." 35 U.S.C. § 117.

Akazawa correctly notes that the Federal Circuit has subsequently held that a properly executed will is sufficient to assign title to a patent upon the death of the testator. See Stickle v. Heublein, Inc., 716 F.2d 1550, 1558 (Fed. Cir. 1983). Of course, Stickle and Owen are easily distinguished from the instant case because they both involve written instruments.

Few courts appear to have examined the issue of intestate passing of title to patents. In Bradley v. Dull, 19 F. 913 (C.C. W.D. Pa. 1884), and Shaw Relief Valve Co. v. City of New Bedford, 19 F. 753 (C.C. D. Mass. 1884), two cases cited by the Owen court, the courts concluded that when a patentee dies intestate, title to the patent vests in the administrator of his estate rather than his heirs. See Bradley, 19 F. at 913 (plaintiff who was assigned patent by administrator allowed to proceed with infringement action because title vested in administrator rather than heirs); Shaw Relief Valve, 19 F. at 755 (same).

The court in Winkler v. Studebaker Bros. Mfg. Co., 105 F. 190 (C.C. S.D.N.Y. 1900), however, allowed an intestate decedent's heirs to proceed with an infringement action where the administrator had not otherwise assigned the patent. See Winkler, 105 F. at 191 (ownership of patent vested in deceased patentee's heirs at law where the administratrix took no action to assign the patent and the estate was declared settled and fully administered.) To the extent that Winkler conflicts with the plain language of 35 U.S.C. § 261, which expressly requires that all assignments of interests in U.S. Patents be assigned "by an instrument in writing," the Court respectfully disagrees with its conclusion.

The Court finds that when Yasumasa died, title to the '716 patent was held by his estate until properly assigned in writing by the legal representative of the estate. Although evidence previously submitted by Akazawa suggests that Nagata acted as the administrator of Yasumasa's estate (see, e.g., Aug. 23, 2006 Nagata Decl., submitted by Akazawa in support of his motion regarding admissibility of evidence under Federal Rule of Evidence 1004), Akazawa now argues that Nagata played only an informal role and had no legal control over the distribution of Yasumasa's estate. (See Sep. 13, 2006 Nagata Decl.)

The Court states no opinion as to who the legal representative of Yasumasa's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS(MLGx) | Date | October 26, 2006 |
| Title | Akira Akazawa, et al. v. Link New Technology International | | |

estate was or is under Japanese law, and need not decide the issue. Link has met its burden of demonstrating that no writing transferring the '716 patent from Yasumasa's estate to his heirs exists. Thus, the burden has shifted to Akazawa to prove that such a writing does exist or that some other chain of title gives Akazawa ownership of the '716 patent. He has failed to do so.

Thus, the Court concludes that title to the '716 patent was not properly assigned from Yasumasa's estate to his heirs. All subsequent assignments by Hitomi, Yuki, and Fumi to Akazawa are therefore invalid. Accordingly, the Court concludes that Akazawa does not hold title to the '716 patent and thus lacks standing to sue. Because Palm Crest's rights under the '716 patent are derivative of Akazawa's ownership, it too lacks standing to sue.

IV.  CONCLUSION

For the foregoing reasons, Link's motion for summary judgment is granted.

Initials of Preparer