## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 03-1474 JVS (MLGx)                Date   July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

Present: The Honorable        James V. Selna

Nancy K Boehme                              Not Reported
Deputy Clerk                               Court Reporter

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

Not Present                               Not Present

**Proceedings:**    (In Chambers) Order  Granting Defendants' Motion for Summary
Judgment for Invalidity and Non-Infringement of the '716 Patent;
Denying  Plaintiffs' Motion for Summary Judgment for Infingement of
the '716 Patent; and Denying  Plaintiffs' Motion for Summary Judgment
for Invalidity, Unenforceability and Non-Infringement of the '580 Patent

     In these patent infringement actions, Plaintiffs Akira Akazawa ("Akazawa") and
Palm Crest, Inc. ("Palm Crest") (collectively, "Plaintiffs") allege that engine coolant-
changing machines manufactured by defendant Link New Tech, Inc. ("Link") infringe
U.S. Patent No. 5,615,716 ("the '716 patent"), and Link alleges that Plaintiffs' coolant-
changing machines infringe U.S. Patent No. 6,523,580 ("the '580 patent").  Plaintiffs
move for summary judgment on the ground that Link infringes the '716 patent, and on
the issues of invalidity, unenforceability, and non-infringement as to the '580 patent.
Link opposes these motions, and cross-moves for judgment on the issues of standing,
invalidity, and infringement as to the '716 patent.

I.     Legal Standard

     Summary judgment is appropriate only where the record, read in the light most
favorable to the nonmoving party, indicates that "there is no genuine issue as to any
material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.
R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In the
context of patent infringement, summary judgment is appropriate where, "upon
construction of the claims and with all reasonable factual inferences drawn in favor of the
non-movant, it is apparent that only one conclusion as to infringement could be reached
by a reasonable jury."  ATD Corp. v. Lydall, Inc., 159 F.3d 534, 540 (Fed. Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 03-1474 JVS (MLGx)          Date     July 13, 2009

Title     Akira Akazawa, et al. v. Link New Tech, Inc.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. Fair Hous. Council v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

Presently before the Court are the parties' cross-motions for summary judgment on the '716 patent, and Plaintiffs' summary judgment motion on the '518 patent. By way of background, the Court notes that Plaintiffs initiated these actions by bringing suit against Link in October 2003 for infringement of the '716 patent (Docket No. 1), Link then filed a counterclaim for infringement of the '580 patent (Docket No. 8), and Plaintiffs counterclaimed seeking declaratory judgment for patent invalidity, unenforceability, and non-infringement of the '580 patent (Docket No. 12).

The Court considers the parties' cross-motions on the '716 patent before turning to Plaintiffs' motion on the '580 patent.

II.     The '716 Patent

Plaintiffs move for summary judgment on the ground that Link infringes the '716 patent. Link cross-moves for judgment on the issues of standing, invalidity, and infringement.

A.     Standing

The Court first considers the issue of standing because it is jurisdictional.

1.     Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

"If a party lacks title to a patent, that party has no standing to bring an infringement action under that patent." Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001) (internal quotation marks omitted).

### 2.    Discussion

Link moves for judgment on the ground that Plaintiffs lack standing because they have no rights in the '716 patent. After remand from the Federal Circuit, the parties stipulated that Akazawa has ownership of the '716 patent, and hence standing.[1]  (Docket No. 184.)  Accordingly, Link's motion on this ground is denied as moot.

### B.    Validity of the '716 Patent

The Court next considers the issue of whether the '716 patent is invalid for indefiniteness.

### 1.    Legal Standard

To obtain summary judgment of invalidity, Link must first overcome the statutory presumption that issued patent claims are valid. 35 U.S.C. § 282.  Link must prove the invalidity by clear and convincing evidence. Apple Computer, Inc. v. Articulate, Sys., Inc., 234 F.3d 14, 26 (Fed. Cir. 2000).

The "determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." Personalized Media Commc'ns, L.L.C v. Int'l Trade Comm'n, 161 F.3d 696, 702 (Fed. Cir. 1998). Section 112 of the Patent Act requires that a patent specification include one or more claims, "particularly pointing out and distinctly claiming subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2.  The Federal Circuit has held that the standard for assessing whether a patent claim is sufficiently definite under § 112 is "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." Miles Labs., Inc. v. Shandon, Inc., 997 F.2d 870, 875 (Fed.

---

[1]  Because the rights of Palm Crest, as patent licensee, depend on the rights of Akazawa, as licensor, the only issue is whether Akazawa has rights in the '716 patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)          Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

Cir. 1993).

If a claim includes a means-plus-function limitation,[2] failure to disclose adequate structure corresponding to the claimed function results in the claim being invalid for indefiniteness. In re Dossel, 115 F.3d 942, 946 (Fed. Cir. 1997). "[S]tructure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." B. Braun Med., Inc. v. Abbott Laboratories, 124 F.3d 1419, 1424 (Fed. Cir. 1997).

2.    Discussion

Link moves for summary judgment on the ground that two terms in claim 2 of the '716 patent[3] – "pressure means" and "second connecting means" – fail to comply with the requirements § 112 and, therefore, are invalid for indefiniteness.

At the outset, the Court agrees with the parties that claim 2 includes means-plus-function limitations, subject to § 112, ¶ 6. The structures corresponding to the means must therefore be identified in the '716 patent specification. Link asserts that "[t]here is no reference to 'pressure means' in the specification," and that, "with respect to 'second connecting means,' the '716 Patent is a mess." (Link's Mot. Br. 8, 9.) But, in its non-infringement argument, Link almost immediately contradicts itself by asserting: "In Claim 2, several means-plus-function limitations must be construed – the 'pressure means' and the 'second connecting means.' The '716 Patent itself makes that task very straightforward, as the structures corresponding to the means are explicitly identified in the specification."[4] (Id. at 10, emphasis supplied.) Indeed, the specification explicitly

---

[2]    See 13 U.S.C. §112, ¶ 6 ("An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.").

[3]    Plaintiffs are only asserting claim 2 of the '716 patent against Link.

[4]    While Link prefaces this statement with conditional language in the preceding paragraph (Link's Mot. Br. 10), and at various points throughout its discussion (see id. at 13), the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

describes those structures – "pressure means" as "compris[ing] an air compressor 34 . . . and air ejector 36 . . . [and] a baffle pin 35" (Kogan Decl. ¶ 2, Ex. 3, at 4:46-52); and "second connecting means" so as "to communicate the rubber plug 19 and liquid inlet 56 when discharging the coolant, or to communicate the liquid outlet 58 and rubber plug 19 when feeding fresh liquid A" (id. at 7:43-48). The Court agrees with Plaintiffs that "those skilled in the art will understand the scope of the invention" after reading claim 2 in light of the specification. (Plaintiffs' Opp'n Br. 12-13.) To extent there is any ambiguity, the Court interprets claims to preserve, rather than defeat, their validity. Eastman Kodak Co. v. Goodyear Tire & Rubber Co., 114 F.3d 1547, 1556 (Fed. Cir. 1997), overruled on other grounds by Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448 (Fed. Cir. 1998) (en banc). In any event, Link has not carried its burden to overcome the presumption of validity that attaches to the '716 patent.

Accordingly, Link's motion is denied on this ground as well.

C.    Claim Construction and Infringement

Link and Plaintiffs present cross-motions for a determination of non-infringement or infringement, respectively.

Determination of "[p]atent infringement requires a two-step analysis." CCS Fitness v. Brunswick Corp., 288 F.3d 1359, 1365 (Fed. Cir. 2002). First, the Court must construe the disputed claims. Id. Then, the Court must compare the "properly construed claims to the accused device, to see whether that device contains all the limitations, either literally or by equivalents, in the claimed invention." Id.

1.    Claim Construction

Plaintiffs are only asserting claim 2 of the '716 patent against Link. The parties agree that the critical limitations of claim 2 are the "pressure means" and the "second connecting means," and the Court has already found that these terms are means-plus-function limitations.

---

Court is persuaded that the specification clearly identifies corresponding structures for construing the means-plus-function limitations in claim 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)    Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

Since there has been no <u>Markman</u> hearing, the parties invite the Court to construe these terms on their cross-motions for summary judgment.

i.    <u>Legal Standard</u>

It is well settled that claim construction is "exclusively within the province of the court." <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372 (1996).

Claim construction of a means-plus-function limitation includes two steps. First, the Court must determine the claimed function. <u>JVW Enters. v. Interact Accessories, Inc.</u>, 424 F.3d 1324, 1330 (Fed. Cir. 2005). Second, the Court must identify the corresponding structure in the written description of the patent that performs that function. <u>Id.</u> "In construing a 'means plus function' claim, a number of factors, including the language of the claim, the patent specification, the prosecution history of the patent, other claims in the patent, and expert testimony may be considered." <u>Medtronic Inc. v. Intermedics, Inc.</u>, 799 F.2d 734, 742 (Fed. Cir. 1986).

With these principles in mind, the Court now turns to the construction of the claim language at issue.

ii.    <u>Discussion</u>

Here, the Court's task is made simple. As the parties correctly point out, claim construction is straightforward because the specification recites the specific structures that correspond to the functions of the "pressure means" and "second connecting means" limitations. (Link's Mot. Br. 10; Plaintiffs' Mot. Br. 14, 21.)

a.    <u>"Pressure Means"</u>

The Court first construes the "pressure means" limitation.

First, the function of the "pressure means," which may be understood from context as synonymous with "pressure action means" by one skilled in the art, is set forth in the specification:

[F]or applying a negative pressure to the pressure action port 16 to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-1474 JVS (MLGx) | Date | July 13, 2009 |
|---|---|---|---|

| Title | Akira Akazawa, et al. v. Link New Tech, Inc. | | |

overheat the coolant to a low temperature by driving the engine when
discharging the coolant from the engine coolant system 1, and applying a
positive pressure (including an atmospheric pressure) to the pressure
action port 16 when feeding fresh liquid.

(Dang Decl. ¶ 3, Ex. 2, at 4:15-21.)  In other words, the function is to produce negative
pressure to vacuum old coolant out of a radiator and into a tank, and to produce positive
pressure to feed new coolant from a tank into a radiator.

Second, the structure that corresponds to the "means" for performing that function
is also set forth in the specification: "[T]he pressure action means is composed of air
compressing means (see air compressor 34), pressure changeover means (see air ejector
36), and element (see baffle pin 35)."  (Id. at 6:5-8; accord Kogan Decl.¶ 2, Ex. 3, at
4:46-52.)  That is, the structure consists of an air compressor, an air ejector, and a baffle
pin.

b.      "Second Connecting Means"

The Court next construes the "second connecting means" limitation.

First, the function of the "second connecting means" is set forth in the
specification: "Another three-way valve 60 is provided as liquid passage changeover
means to communicate the rubber plug 19 and liquid inlet 56 when discharging the
coolant, or to communicate the liquid outlet 58 and rubber plug 19 when feeding fresh
liquid A."  (Dang Decl. ¶ 3, Ex. 2, at 7:43-50.)  It functions thus to connect the tubing
extending from the radiator to the old coolant tank, and to connect the tubing extending
from the new coolant tank to the radiator.

Second, the corresponding structure is also set forth in the specification: "In FIGS.
11 and 12, the same parts as in the preceding drawings are identified with same reference
numerals."  (Id.)  Notably, "the parties agree that the specification of the '716 Patent
indicates that [the] structure that performs the function of the 'second connecting means'
is [the] three way valve 60."  (Plaintiffs' Mot. Br. 21, citing Link's Mot. Br. 13;
alterations in original.)

2.      Infringement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS (MLGx) | Date | July 13, 2009 |

| | |
|---|---|
| Title | Akira Akazawa, et al. v. Link New Tech, Inc. |

Having construed these limitations, the Court now turns to the issue of infringement. Plaintiffs move for summary judgment arguing that Link's accused devices literally infringe the "pressure means" and "second connecting means" limitations of claim 2 of the '716 patent. Link moves for judgment of non-infringement.

i.    Legal Standard

To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or by equivalents. Playtex Prods., Inc. v. Proctor & Gamble Co., 400 F.3d 901, 906 (Fed. Cir. 2005). Under the Patent Act's means-plus-function provision, 35 U.S.C. § 112, ¶ 6, "the accused device must perform the identical function as recited in the claim element while the doctrine of equivalents may be satisfied when the function performed by the accused device is only substantially the same." Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1320-21 (Fed. Cir. 1999) (emphases supplied); see also Valmont Indus., Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1043 (Fed. Cir. 1993) ("In the context of section 112, however, an equivalent results from an insubstantial change which adds nothing of significance to the structure, material, or acts disclosed in the patent specification.").

ii.    Discussion

Link's accused devices are engine coolant-changing machines that employ a "radiator flush system," as set forth in the '580 patent. The issue is thus whether Link's devices embodying the '580 patent infringe on claim 2 of the '716 patent.

On their respective motions, the parties have the initial burden to show an absence of a genuine issue of material fact. At the outset, there is no dispute that the accused devices do not have a baffle pin or three-way valve. (Plaintiffs' Mot. Br. 17-20, 23-25; Link's Mot. Br. 14, citing Kogan Decl. ¶ 4, Ex. 5, at 50-52, 58, 96-99.) There is also no genuine issue that all the accused devices operate by the same technology. (Kogan Decl. ¶ 3, Ex. 4; id. ¶ 7, Ex. 8.)

a.    "Pressure Means"

The Court first considers whether Link's devices infringe on the "pressure means" limitation of claim 2, either literally or by equivalents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                    Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

First, the parties dispute whether the accused devices literally perform an identical function as the "pressure means" structure. Plaintiffs assert that they do: "The accused Link device, just like the 'pressure means' structure, functions to withdraw old coolant from the radiator into a tank and to feed new coolant from a tank into the radiator." (Plaintiffs' Mot. Br. 16.) But Link correctly points out that the accused devices do not have a baffle pin. (Link's Mot. Br. 14.) Therefore, the accused devices and the claimed structure do not literally perform the same function.

However, there may be an identity of function under the doctrine of equivalents. To the extent Link contends there can be no infringement because the accused devices do not have a baffle pin, the absence of this component is simply irrelevant if there is structural equivalence. Link cites no authority for the proposition that there can be no infringement of a means-plus-function limitation where the accused structure is missing a component of the claimed structure. To the contrary, the Federal Circuit in Odetics, Inc. v. Storage Technology Corp., 185 F.3d 1259, 1268 (Fed. Cir. 1999), held that "structures with different numbers of parts may still be equivalent under § 112, ¶ 6, thereby meeting the claim limitation." Hence, the determination of structural equivalence, in the context of a means-plus-function patent claim, does not require a component-by-component analysis of the structure corresponding to the claimed function and the allegedly equivalent structure in the accused device. Id. Section 112, ¶ 6 requires only that two structures be equivalent, but not that they be structurally equivalent.[5] IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1436 (Fed. Cir. 2000). To be equivalent, the structures must be "substantially the same." Al-Site, 174 F.3d at 1320-21.

---

[5]    As explained in IMS Technology,

[t]he difference between "equivalent structures" and "structural equivalents" can be demonstrated with a simple example . . . . A claim includes part A, part B, and "means for securing parts A and B together in a fixed relationship." The written description discloses that parts A and B are made of wood and are secured together by nails. For purposes of the invention, it does not matter how parts A and B are secured; nails are not a critical part of the invention. A screw is not a nail, but for purposes of § 112, ¶ 6, it is equivalent structure in the context of the invention, though it is not the "structural equivalent" of a nail.

206 F.3d at 1436 n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)              Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

The issue therefore is whether "the structures that participate in the positive pressure aspect of the function of [Link's] devices are substantially <u>different</u> than those in the '716 Patent." (Link's Opp'n Br. 12.)  According to Plaintiffs, "the fact that the 'pressure means' device of the '716 Patent uses a baffle pin[,] and Link's accused device uses a tube, cannot change the obvious conclusion that the two devices are equivalent." (Plaintiffs' Mot. Br. 20.)  But Plaintiffs never explain why this difference is insubstantial; they merely assert it.  Plaintiffs therefore fail to carry their initial burden on summary judgment.

Link, by contrast, explicates the reasons why "differences in how pressure is generated in the '716 Patent and [the accused] devices are not insubstantial." (Link's Opp'n Br. 12.)  Link offers evidence that "[t]he '716 Patent relies on the manual insertion of baffle pin 35 into the ejector to switch the machine from suction to pressure." (<u>Id.</u>, citing Dang Decl. ¶ 6, Ex. 2, at Col. 5:1-14.)  More importantly, Link offers evidence that this modus operandi is different and problematic for several reasons.  In Link devices, the air flow is diverted away from the ejector, and the ejector is not involved in the generation of pressure.  (Awad Decl. ¶ 7.)  In the '716 patent, the air still flows into the ejector.  (<u>Id.</u> ¶ 6.)  The baffle pin in the '716 patent must be removed every time a technician wishes to access the "inners" of the device.  Beside the mechanical inconvenience, there is potential for harm: "[I]nsertion of the baffle pin into the ejector could also damage the ejector, or the pin could even become lodged in the ejector somehow, which would require[] repairs to the machine, or could even cause an explosion because of the buildup of pressure in the machine."  (<u>Id.</u> ¶ 7.)

Contrary to Akazawa's contention at oral argument, the possible consequence of the difference in the two devices is not speculative.  The Court finds that this evidence is sufficient for Link to carry its initial burden on summary judgment.  The burden thus shifts to Plaintiffs, who must produce enough evidence to rebut Link's claim that the above differences are substantial enough to preclude a finding of structural equivalence.  But Plaintiffs offer no evidence to rebut this claim, only conclusory statements that Link's claims are "[u]nsubstantiated."  (Plaintiffs' Reply Br. 11.)

Accordingly, the Court enters judgment of non-infringement as to the "pressure means" limitation of claim 2.

Unlike the example in <u>IMS</u> <u>Technology</u>, <u>supra</u> footnote 5, where it did not matter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-1474 JVS (MLGx) | Date | July 13, 2009 |
|---|---|---|---|

| Title | Akira Akazawa, et al. v. Link New Tech, Inc. |
|---|---|

how parts were structurally held together, the undisputed evidence here shows that the use of an additional tube, instead of a baffle pin, to generate pressure in the accused structure is a substantial change that may well confer nontrivial benefits over the claimed structure.[6]

b.    "Second Connecting Means"

The Court next considers whether Link's devices infringe on the "second connecting means" limitation.

As before, the parties first dispute the identity of function. But, as the Court reasoned above, there is nothing to suggest that the accused devices literally perform the same function as the "second connecting means" structure. Notably, the accused structure employs two two-way valves, whereas the claimed structure employs one three-way valve. (See Kogan Decl. ¶ 9, Ex. 10.) Thus, while their overall function is similar, it is not literally identical, as illustrated below.[7]

Turning to the issue of structural equivalence, the Court notes that Plaintiffs attempt to reason by analogy, as follows:

The relationship between the three way valve of the '716 Patent and the manifold with two valves of Link is analogous to the relationship between [the] following faucets. Faucet one has a three way valve with one handle to

---

[6]    Link also offers evidence that the claimed language of the '580 patent was substantially narrowed to overcome the patent examiner's rejections in light of the '718 patent. (See Nielsen Decl., Ex. H, at 154-61, 186-90.) Although such narrowing amendments are concessions that the patent does not extend as far as the original claim, whether this bars subsequent infringement claims based on the doctrine of equivalents requires further review, which is unnecessary here. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 737-38 (2002).

[7]    The ensuing discussion illustrates that the function of the accused structure is more than simply "to connect the tubing extending from the radiator to the old coolant tank, and to connect the tubing extending from the new coolant tank to the radiator." (Plaintiffs' Mot. Br. 23.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                    Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

set cold/hot water, while faucet two has a manifold with two handles for
setting hot/cold water.  The two faucets may look different, but they are
obvious equivalents of each other, and may be interchanged with each other.

(Plaintiffs' Mot. Br. 24, citing Palumbo v. Don-Joy Co., 762 F.2d 969, 975 (Fed. Cir.
1985), for the proposition that the interchangeability of an ingredient is an important
factor in the determination of equivalents.)  Plaintiffs then cite a district court opinion
from Texas, relying on Odetics, 185 F.3d at 1268, for the proposition that "a proper claim
construction cannot rule out equivalents of the overall structure merely because the
components of potentially equivalent structures are combined or arranged in a different
way or replaced with substitute components."  Trinity Indus., Inc. v. Road Sys., Inc., 121
F. Supp. 2d 1028, 1048 (E.D. Tex. 2000).

But Plaintiffs' argument presupposes that the accused and the claimed structures
are interchangeable and, more to the point, that any differences between the two
structures are insubstantial.  Plaintiffs therefore have not carried their initial burden on
summary judgment.

By contrast, Link once again offers evidence to show significant functional
differences between the accused and the claimed structures:

One significant functional difference between [Link's] devices and the '716
patent is [the accused] devices' ability to pull fluid into multiple tanks
simultaneously, or to drive fluid back from multiple tanks back into the
radiator simultaneously, which is advantageous for cars with larger radiators
in that there is greater capacity for fluid exchange and the user can
accomplish the job more quickly.

The possibility that the three-way valve in the device described in the '716
Patent could clog from debris in the radiator would effectively prevent the
introduction of new coolant (and subsequently burn up the engine), whereas
with independent valves and tanks in [Link's] machines, if the valve that
received spent coolant clogged, it would not prevent the delivery of fresh
coolant into the car.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                    Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

(Link's SGI ¶¶ 38, 39.)[8]  Plaintiffs' rebuttals are to no avail.  Notwithstanding the
"alleged advantages" of the accused devices, Plaintiffs contend that "Link does not
dispute . . . that the manifold performs the same function as the three-way valve"
(Plaintiffs' Reply Br. 13), or that it "obtain[s] the same result: old coolant is removed
from the radiator to the empty tanks while new coolant is fed from other tanks to the
radiator" (id. at 14).  Not so.  Link contends, persuasively, that the accused structure does
more than simply connect the radiator and the coolant tanks, but does so more rapidly and
with fewer risks than the claimed structure.  "Therefore, the function is not equivalent,
the way is not equivalent, and the result is not equivalent."  (Link's Mot. Br. 18.)
Plaintiffs also attempt to rebut Link's showing by asserting that "the manifold functions
in substantially the same way as the three-way valve in regulating the exchange of fluids
by the use of valves."  (Plaintiffs' Reply Br. 14.)  Significantly, Plaintiffs offer no
evidence to support this claim.

    Plaintiffs' reliance on Graver Tank & Manufacturing Co. v. Linde Air Products
Co., 339 U.S. 605, 607 (1950), is also misplaced to the extent the accused device includes
more than "unimportant and insubstantial changes and substitutions in the patent."
Moreover, notwithstanding Odetics, 185 F.3d at 1268, the Federal Circuit's case law
allows for greater weight to be given to individual components that play a central role in
the identified structure.  See Toro Co. v. Deere & Co., 355 F.3d 1313, 1324 (Fed. Cir.
2004); see also Solomon Technologies, Inc. v. Int'l Trade Comm'n, 524 F.3d 1310,
1317-18 (Fed. Cir. 2008) ("The prosecution history shows that the patentee relied on that
advantage of a disk over a shaft in order to overcome the prior art.  We therefore see no
error in the administrative law judge's finding that, based on the use of rotor shafts rather
than disks, the Toyota transaxles are not structurally equivalent to the structure disclosed
in the specification of the '932 patent.").[9]

    Accordingly, because Link has carried its initial burden to show a substantial
difference, and because Plaintiffs have failed to rebut that showing with evidence, the
Court enters judgment for Link as to non-infringement of the "second connecting means"
structure.

---

    [8]  These citations refer to paragraphs 8 through 10 of the
Awad Declaration.  SGI denotes "Statement of Genuine Issues."

    [9]  See discussion supra footnote 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS (MLGx) | Date | July 13, 2009 |

| | |
|---|---|
| Title | Akira Akazawa, et al. v. Link New Tech, Inc. |

In sum, the Court enters judgment of non-infringement as to the '716 patent.

III.    The '580 Patent

Having resolved the parties' cross-motions for summary judgment on the '716 patent, the Court now turns to Plaintiffs' motion for summary judgment on the '580 patent. Specifically, Plaintiffs move for judgment on their counterclaims for invalidity, unenforceability, and non-infringement as to the '580 patent.

A.    Validity of the '580 Patent

Plaintiffs move for judgment of invalidity on a number of grounds: (1) non-inventorship; (2) anticipation and obviousness of independent claim 1 of the '580 patent; (3) anticipation of dependent claims 5 and 6; and (4) indefiniteness and non-enablement. The Court considers each in turn.

1.    Non-Inventorship

By way of background, Adam Awad ("Awad") sold coolant-changing machines, including LC2B machines,[10] for Palm Crest between 1997 and early 2001. (SUF ¶¶ 12, 16.)[11] Awad filed a patent application of his own in late 2001, which issued into the '580 patent on February 25, 2003. (Id. ¶ 20.)

Under 35 U.S.C. § 102(f), Plaintiffs offer Exhibit 1 of the Dang Declaration to prove that "Awad did not invent what he claimed in the '580 Patent" because "[e]very element of his claimed invention was derived from the '716 Patent in combination with the LC2B machine." (Mot. Br. 8.)

i.    Legal Standard

---

[10]    Plaintiffs explain that the original owner of the '716 patent "developed a number of [coolant-changing machine] models with varying plurality of tanks, which are typically designated by the number of tanks: e.g. LC2B for a two-tank apparatus; LC3B for a three-tank apparatus, and so on." (Mot. Br. 4.)

[11]    SUF refers to Plaintiffs' "Statement of Uncontroverted Facts."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

"A person shall [not] be entitled to a patent [where] he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). To prove derivation under § 102(f), the party asserting invalidity must prove by clear and convincing evidence "'both prior conception of the invention by another and communication of that conception to the patentee.'" Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332, 1344 (Fed. Cir. 2003) (quoting Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1576 (Fed. Cir. 1997)).

ii.    Discussion

At the outset, the Court has already found that the '580 patent does not contain all the limitations, either literally or by equivalents, of the '716 patent. This determination of non-infringement precludes finding that every element of the '580 patent was derived from the '716 patent, even in combination with the LC2B machine. There is simply no merit to Plaintiffs' argument that "every element of claim 1 of the '580 Patent can be found in the '716 Patent, except for three features" – a wheeled cart, support structure, and control panel allegedly derived from the LC2B machine. Notably, the '580 employs different pressure-developing and conduit-manifolding means. See discussion supra Section II.C.

Moreover, Plaintiffs offer no competent, admissible evidence to support a derivation claim. Exhibit 1 is not properly authenticated and, therefore, is inadmissible. (See Dang Decl. ¶ 2.) As such, Plaintiffs fail to comply with the summary judgment standard, Fed. R. Civ. P. 56(e)(1), much less the standard of clear and convincing evidence required to rebut the presumption of patent validity.

The Court therefore denies judgment based on alleged non-inventorship.

2.    Anticipation and Obviousness of Claim 1

Plaintiffs contend that the '580 patent would have been found to be anticipated, or rendered obvious, had Awad properly disclosed the LC2B prior art.

i.    Anticipation

a.    Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 03-1474 JVS (MLGx) | Date | July 13, 2009 |

| | |
|---|---|
| Title | Akira Akazawa, et al. v. Link New Tech, Inc. |

For prior art to anticipate a claim, a single prior art reference must disclose every limitation of the claimed invention. <u>Schering</u> Corp. <u>v.</u> <u>Geneva</u> <u>Pharms., Inc.</u>, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Such disclosure must be "enabling," <u>i.e.</u>, it must be sufficient to permit a person having ordinary skill in the art to practice the invention. <u>SmithKline</u> <u>Beecham</u> Corp. <u>v.</u> <u>Apotex</u> Corp., 403 F.3d 1331, 1342 (Fed. Cir. 2005). Anticipation is a question of fact, <u>id.</u> at 1343, and whether prior art is enabling "is a question of law based upon underlying factual findings," <u>see</u> <u>Crown</u> <u>Operations</u> <u>Int'l, Ltd.</u> <u>v.</u> <u>Solutia</u> <u>Inc.</u>, 289 F.3d 1367, 1376 (Fed. Cir. 2002). "However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." <u>SmithKline</u>, 403 F.3d at 1343.

b.    <u>Discussion</u>

To prevail on this issue, Plaintiffs must prove by clear and convincing evidence that all of the elements and limitations of each asserted claim are expressly or inherently found in a prior art reference. <u>See, e.g.</u>, <u>Celeritas</u> <u>Techs. Ltd. v.</u> <u>Rockwell</u> <u>Int'l</u> Corp., 150 F.3d 1354, 1360 (Fed. Cir. 1998). Plaintiffs are unable to do so here.

As set forth above, at least two limitations in the '580 patent differ from those in the '716 patent. <u>See</u> discussion <u>supra</u> Section II.C. On a related note, Link offers additional evidence that the LC2B machine "does not contain the suction developing means, the pressure developing means, conduit switching means, or conduit manifolding means of Claim 1 of the '580 Patent." (Opp'n Br. 12, citing SGI ¶ 32.) Plaintiffs cannot rebut this showing, much less carry their initial burden on summary judgment, by relying on inadmissible evidence. (Reply Br. 9, citing Exhibit 1.)

Accordingly, because Plaintiffs have failed to identify a single prior art reference that contains all of the limitations of claim 1 of the '580 patent, the Court denies judgment based on alleged anticipation.

ii.    <u>Obviousness</u>

a.    <u>Legal</u> <u>Standard</u>

A patent claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                    Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); Merck & Co., Inc. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005). A finding of obviousness requires the existence of "a teaching or suggestion within the prior art, within the nature of the problem to be solved, or within the general knowledge of a person of ordinary skill in the field of the invention, to look to particular sources, to select particular elements, and to combine them as combined by the inventor." Crown Operations Int'l, Ltd. v. Solutia, Inc., 289 F.3d 1367, 1376 (Fed. Cir. 2002).

In determining whether a claim is obvious, a court may consider the following four factors: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) "secondary considerations," including commercial success and long-felt need. Graham v. John Deere Co., 383 U.S. 1, 17 (1966); Merck & Co., 395 F.3d at 1372-73.

b.    Discussion

Here, Plaintiffs offer no admissible evidence as to the four factors identified above. In their Motion, Plaintiffs' obviousness discussion is brief, and entirely bereft of any citation to evidence. Plaintiffs misapprehend the issue by arguing, in their Reply, that Link "has not disputed any material facts." (Reply Br. 12.) Indeed, Link disputes whether a person of ordinary skill in the field would have found differences between the '580 patent and the '716 patent obvious.

Accordingly, because Plaintiffs have failed to identify admissible evidence to support their claim of obviousness, the Court denies judgment on this ground.

3.    Anticipation of Claims 5 and 6

Plaintiffs contend that "dependent claims 5 and 6 of the '580 Patent are also anticipated in view of the prior art." (Mot. Br. 14.) It is undisputed that claim 5 is directed to a four-tank embodiment, claim 6 to a three-tank embodiment. Link's counterclaims allege that Akazawa makes and sells LC3B and LC4B machines that infringe the '580 patent.

Link now concedes, in its Opposition, "that Plaintiffs do not appear to have made

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 03-1474 JVS (MLGx)                     Date    July 13, 2009

Title    Akira Akazawa, et al. v. Link New Tech, Inc.

any sales of the LC4B in the United States." (Opp'n Br. 22.) The Court therefore dismisses, without prejudice, Link's counterclaim against LC4B machines, pursuant to Link's representations in the Opposition. (Id. at 22-23.)

As to the LC3B machines, Plaintiffs cannot prevail on this issue because they cannot prove by clear and convincing evidence that all of the elements and limitations of each asserted claim are expressly or inherently found in a prior art reference. See, e.g., Celeritas Techs., 150 F.3d at 1360. Plaintiffs attempt to establish that "the LC3B machine was described in a printed publication in Japan as early as 1997," but their cited evidence violates the best evidence rule because the deponent's testimony relies on the contents of a writing, and neither an original or duplicate of that writing has been offered into evidence. (Mot. Br. 13, citing Dang Decl. ¶ 7, Ex. 6, at 20:4-14.) Such inadmissible evidence is a far cry from the clear and convincing evidence required here.

Plaintiffs also offers evidence that "Akazawa has previously cited U.S. Patent Nos. 5,746,259 and 5,853,068 to Defendant." (Mot. Br. 15, citing Dang Decl. ¶ 10.) But there is no explanation as to how each one of these patents disclose all of the limitations of claims 5 and 6 of the '580 patent.

The Court therefore declines to enter judgment on this ground.

4.    Indefiniteness and Non-Enablement

Plaintiffs allege that claim 1 of the '580 patent is indefinite and non-enabling in their Motion, but do not demonstrate indefiniteness or non-enablement by clear and convincing evidence and, notably, make no mention of these issues in their Reply. Accordingly, the Court denies judgment based on alleged indefiniteness and non-enablement.

B.    Inequitable Conduct

The Court next considers Plaintiffs' motion for summary judgment on inequitable conduct. Plaintiffs contend that Awad (1) fraudulently claimed inventorship and (2) fraudulently withheld material prior art.

1.    Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 03-1474 JVS (MLGx)                    Date   July 13, 2009

Title      Akira Akazawa, et al. v. Link New Tech, Inc.

Inequitable conduct is an applicant's failure to prosecute patent applications with candor, good faith, and honesty. Warner-Lambert Co. v. Teva Pharms., Inc., 418 F.3d 1326, 1342 (Fed. Cir. 2005). To prove such conduct, Plaintiffs must show by clear and convincing evidence that (1) Awad failed to disclose material information to the Patent and Trademark Office ("PTO"), and (2) that the omission was made with an intent to mislead the PTO. Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1439 (Fed. Cir. 1991). Materiality and intent are issues of fact. Syntex LLC v. Apotex, Inc., 407 F.3d 1371, 1384 (Fed. Cir. 2005).

Information is material when it is not cumulative and it either (1) establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim, or (2) refutes, or is inconsistent with, a position the applicant takes in (i) opposing an argument of unpatentability relied on by the PTO, or (ii) asserting an argument of patentability. 37 C.F.R. § 1.56. "A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability." Id.

The intent to mislead the PTO may be inferred from circumstantial evidence. Gross negligence does not, by itself, justify the inference of an intent to mislead. Lipman v. Dickinson, 174 F.3d 1363, 1370 (Fed. Cir. 1999). "[A] patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1416 (Fed. Cir. 1987).

2.    Discussion

As a preliminary matter, the Court rejects Plaintiffs' argument that the '580 patent is unenforceable because Awad fraudulently claimed inventorship. (Mot. Br. 9.) This argument presupposes that Awad was not the inventor of the '580 patent, a proposition lacking clear and convincing evidence, as discussed above.

Plaintiffs also allege that the '580 patent is unenforceable because "Awad withheld

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 03-1474 JVS (MLGx)                    Date   July 13, 2009

Title   Akira Akazawa, et al. v. Link New Tech, Inc.

disclosure of the LC2B because he and his prosecution attorneys knew that the LC2B machine, 'by itself or in combination with' the '716 Patent, would have rendered his claims obvious under 35 U.S.C. § 103." (Mot. Br. 10.) Here, it is undisputed that Awad knew of the LC2B machines. It is also undisputed that Awad disclosed the '716 patent. The only issue is whether LC2B prior art was material to the patentability of the '580 patent, and whether Awad omitted this prior art with intent to mislead the PTO.

i.    Materiality

First, the Court is not persuaded that the LC2B machine was material. Plaintiffs's materiality argument is predicated on the false assumption that "every element of claim 1 of the '580 Patent can be found in the '716 Patent," except for a wheeled cart, support structure, and control panel – "common features that can be found in the LC2B machine." (Mot. Br. 11.) Notably, as discussed above, the '580 employs different pressure-developing and conduit-manifolding means from the '716 patent. Hence, prior art pertaining to a wheeled cart, support structure, and control panel is irrelevant to the issue of patentability and, therefore, the LC2B prior art is immaterial.

ii.    Intent to Mislead

Second, there is no direct evidence of Awad's intent to mislead the PTO; Plaintiffs must therefore rely on circumstantial evidence, which typically requires a showing of materiality first. See FMC Corp., 835 F.2d at 1416. As such, the Court cannot draw an inference of intent to mislead. Moreover, even if Plaintiffs could establish materiality, the LC2B prior art would present a low level of materiality, thereby making it more difficult for the Court to draw the inference of intent to mislead. Cf. Id., 835 F.2d at 1416.

Accordingly, Plaintiffs have failed to carry their burden on the issue of inequitable conduct, and the Court denies judgment on this issue.

C.    Non-infringement

The Court rejects Plaintiffs' non-infringement argument. As Link correctly points out, "Plaintiffs offer no claim construction, fail to compare the accused device to the '580 Patent, and merely rely on an invalidity argument to carry [their] burden on summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 03-1474 JVS (MLGx)                    Date   July 13, 2009

Title      Akira Akazawa, et al. v. Link New Tech, Inc.

judgment as to the non-infringement issue." (Opp'n Br. 22.) In rebuttal, Plaintiffs pose the rhetorical question: "[H]ow an there be infringement when the very alleged infringing thing had been in existence more than one year prior to the patent filing date itself?" (Reply Br. 13.) Significantly, the evidence that Plaintiffs use to establish the prior existence of the LC3B machine is inadmissible under the best evidence rule. See discussion supra Subsection III.A.3.

Accordingly, the Court denies judgment on this ground.

IV.   Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' motions, and GRANTS Link's cross-motion on the '716 patent; the Court enters judgment for Link that its devices embodying the '580 patent do not infringe on the "pressure means" and "second connecting means" limitations of the '716 patent. The Court DISMISSES, without prejudice, Link's counterclaim against LC4B machines. The Court DENIES Plaintiffs' motion directed to the '580 patent.

IT IS SO ORDERED.

|  | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | nkb | | |